IRVING NEGER, PLAINTIFF-RESPONDENT, v. JOANNE NEGER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 21, 1982—Decided September 24, 1982.

134

Before Judges MATTHEWS, ANTELL and FRANCIS.

*Vincent P. Celli* argued the cause for appellant.

*Roy E. Kurnos* argued the cause for respondent (*Murphy and Kurnos,* attorneys).

The opinion of the court was delivered by

**MATTHEWS, P.J.A.D.**

This matter was instituted by plaintiff seeking to enforce an order of the Superior Court of California respecting a change of custody of Carly Paul Neger, a minor. Defendant filed a cross-motion seeking a determination that the California court was without jurisdiction when it entered its order. After a brief hearing conducted on September 10, 1982, the Chancery Division judge deferred jurisdiction to California.

The parties, who were then residents of Morris County, were married in December 1973. Carly, infant child of the marriage, was born to the parties on October 14, 1977, in Livingston, Essex County. The parties continued to be residents of the State of New Jersey until September 1979, when they moved to California because of the plaintiff's new job opportunity. Defendant and Carly remained in California until December 1979, when they returned to this State where they have been residents ever since. Plaintiff has continued to be a California resident since September 1979.

The parties were divorced by a Final Judgment of Dissolution of Marriage entered on June 22, 1981 in California. The collateral issues were disposed of by means of a Property Settlement Agreement which was filed with the California courts on January 8, 1982, and incorporated by reference into the Final Judgment of Dissolution of Marriage. Under the terms of that Property Settlement Agreement the parties were awarded joint legal custody of Carly. Defendant was awarded physical custody of Carly, subject to the plaintiff's rights of visitation.

Problems arose over plaintiff's visitation with Carly both during the summer of 1982 and beginning in September 1982, when Carly was to have begun school in New Jersey. When it appeared that the parties could not agree between themselves as to an appropriate modification of the Property Settlement Agreement, defendant filed a proceeding in the State of California, originally returnable July 20, 1982. Shortly thereafter, on July 15, 1982, by an *ex parte* application, plaintiff obtained an

order of the court of the State of California providing for visitation during the summer of 1982, from July 23, 1982 to August 29, 1982. The August 29 date was later extended to August 31, 1982.

The July 20, 1982 return date of defendant's order to show cause to modify the visitation terms of the Property Settlement Agreement was adjourned at the request of plaintiff, who claimed that he would not be in the State of California on that date. A determination was made on August 10, 1982 adjourning the return date of defendant's order to show cause for modification of the visitation provisions to August 31, and to afford plaintiff the opportunity to file papers with respect to the issues of custody, which had only then been raised.

Prior to the hearing which was to have taken place on August 31, 1982, defendant, on the advice of California counsel, left the State of California, and returned to the State of New Jersey with Carly. Notwithstanding defendant's absence, a hearing was held by the Superior Court of California for San Diego County on August 31, 1982, as a result of which an order was entered by that court awarding sole custody of Carly to plaintiff, commencing forthwith and continuing through the school year ending in June of 1983, and thereafter until further order of the court.

In the action instituted here plaintiff sought to have the California order afforded full faith and credit, and also sought to restrain the physical removal of Carly from the jurisdiction of the courts of this State. Defendant in her cross-motion sought an adjudication of the lack of jurisdictional basis of the California order, a finding that the courts of this State have sole jurisdiction to make a custody determination, and to enforce the Property Settlement Agreement entered into between the parties with modification of the visitation provisions.

The Uniform Child Custody Jurisdiction Act (the act) was adopted by the Legislature as *L.*1979, *c.* 124 *et seq.*, effective July 3, 1979. The act, *N.J.S.A.* 2A:34–28 *et seq.*, sets forth the

circumstances under which this State will recognize out-of-state custody orders. *N.J.S.A.* 2A:34–41 provides that the courts of this State will recognize and enforce an initial or modification decree of the courts of another state only where that state had assumed jurisdiction under statutory provisions substantially in accordance with the New Jersey act, or which was made under factual circumstances meeting the jurisdictional standards of the New Jersey act.

■ California has also enacted the Uniform Child Custody Jurisdiction Act in its Civil Code, §§ 5150–5174. The operative provisions of the California act are substantially the same as those provisions as enacted in New Jersey. Inasmuch as California has enacted statutory provisions which are substantially in accordance with the New Jersey act, *N.J.S.A.* 2A:34–41 does not preclude the courts of this State from recognizing and enforcing an initial or modification decree of the courts of the State of California, so long as California has properly assumed jurisdiction under the act.

■ We are satisfied that the Chancery Division judge erroneously deferred jurisdiction to the California court, and accordingly reverse his order permitting plaintiff to remove Carly to California.

Under the undisputed facts New Jersey is the home state of Carly within the meaning of the act. See *N.J.S.A.* 2A:34–30(e):

"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent ... for at least 6 consecutive months
. . . .

Such being the case, the California courts would be precluded from entertaining proceedings with respect to the child's custody. *See In re Kern Marriage,* 87 *Cal.App.*3d 402, 406, 150 *Cal.Rptr.* 860, 862 (D.Ct.App.1979).

Nor do we regard it to be significant that the proceedings for modification of custody were instituted by defendant. Without doubt her resort to the California court conferred personal jurisdiction on that court. That fact, however, does not confer

subject matter jurisdiction on the California court. The terms are simply not interchangeable under the act. *In re Ben-Yehoshua Marriage,* 91 *Cal.App.*3d 259, 154 *Cal.Rptr.* 80 (D.Ct.App. 1979):

> From the trial court's memorandum decision it is apparent that in exercising jurisdiction over the custody issue the court equated personal jurisdiction over the parties with subject matter jurisdiction over the custody of the children, predicating its decision on the fact that at the time of the order entered on the order to show cause the husband, the wife and the children were all present in California and the husband appeared generally and stipulated jurisdiction over the custody issue. The court then reasoned that "... where jurisdiction of the person or of the res has attached, it is not defeated by removal of the person or the res beyond the territorial jurisdiction of the court." The false premise upon which this conclusion is grounded is that jurisdiction over the custody issue initially attached. Determinative of this central issue is: (1) The fact that subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel. [citations omitted] In addition, the Uniform Commissioner's Note to the provision in the Uniform Child Custody and Jurisdiction Act (the Act) which is substantially identical to Civil Code section 5152, subdivision (1)(b), states in part: "The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction." (9 U.Laws Ann. (1973) p. 108). (2) The exclusive method of determining subject matter jurisdiction in custody cases in California is the Uniform Child Custody and Jurisdiction Act (Civ.Code, §§ 5150–5174). The provisions of the Act supersede any contrary decisional and statutory laws. [91 *Cal.App.*3d at 263, 154 *Cal.Rptr.* at 82]

In *In re Ben-Yehoshua Marriage,* the wife filed an action for dissolution of marriage and child custody two weeks after she and the couple's three children arrived in California. Prior to that time husband and wife, together with their three children, had been domiciled in Israel from the time of their marriage for 13 years. The husband came to California temporarily and accepted service of process. However, he thereafter surreptitiously took the children back to Israel, where he remained and where he was awarded a decree of divorce and child custody.

The trial court entered a decree of Dissolution of Marriage, awarded custody of the children to the wife, ordered the husband to pay child support, attorneys' fees and costs and also ordered the division of certain real property located in the State of Israel. The Court of Appeals reversed so much of the lower

court's judgment as awarded custody of the minor children of the marriage to the wife and ordered the husband to pay child support, because the appeals court found that personal jurisdiction over the parties had been improperly equated with subject matter jurisdiction over the custody of the children.

The California courts have addressed the problem of the possibility of more than one state having jurisdiction. In *In re Hopson Marriage,* 110 *Cal.App.*3d 884, 168 *Cal.Rptr.* 345 (1980), the District Court of Appeals was faced with an assertion of jurisdiction by both California and Tennessee. Stating that an "orderly procedure" existed to resolve such a dilemma, the court said:

> The commissioners realistically anticipated the problem of concurrent jurisdiction existing in more than one state. Therefore, they provided additional steps to assure that only one state makes the custody decision. The fact that one state has jurisdiction over a custody dispute under Civil Code section 5152, subdivision (1)(b) does not preclude another state from jurisdiction (*Schlumpf v. Superior Court,* 79 *Cal.App.*3d 892, 898, 145 *Cal.Rptr.* 190). The first step in the UCCJA's orderly procedure for determining which court may exercise jurisdiction requires that the court must ascertain whether it has jurisdiction under the terms of the UCCJA; second, the court must determine whether there is a custody proceeding pending or a decree existing in another state which presently has jurisdiction. If the court finds that it has jurisdiction, and that there is no proceeding pending or a decree existing, then it must be determined which state is the most convenient forum to exercise jurisdiction. If it finds another state is a more convenient forum, then under the standards of the UCCJA, *it may not exercise jurisdiction* (*Carson v. Carson* (1977) 29 *Or.App.* 861, 565 *P.2d* 763; affirmed 1978, 282 *Or.* 469, 579 *P.2d* 846). Examination of the instant record indicates that these procedures were not followed by Tennessee. [110 *Cal.App.*3d at 899–900; 168 *Cal.Rptr.* at 356]

The record contains no indication whatsoever that the Superior Court of California for San Diego ever followed the procedure set out in *Hopson.* The order entered below by Judge MacKenzie recites a telephone conversation with the Presiding Judge of the Superior Court for San Diego County. Judge MacKenzie did not speak with Judge Milkes, who actually heard the matter in California, because the judge was unavailable. We believe, however, that had Judge Milkes made a *Hopson* determination, his findings would have been incorporated into the order that he entered.

While we can only speculate as to what the courts of California would have found had a determination as to subject matter jurisdiction under the UCCJA been held, the California Court of Appeals has held that where another state has failed to exercise child custody jurisdiction substantially in conformity with the act, the California courts were not constrained by principles of comity from an appropriate exercise of jurisdiction in the cause. *Allison v. Superior Court,* 99 *Cal.App.*3d 993, 160 *Cal.Rptr.* 309 (D.Ct.App.1979). In *Allison* the court had the occasion to review an order entered by a Texas court which purported to terminate the mother's visitation rights. The court found that a hearing had been held in the mother's absence, after three days' notice to her and after a request for continuance had been denied. The court then conducted a *Hopson*-type examination of the jurisdictional requirements under the California UCCJA and found that, notwithstanding the purported exercise of child custody jurisdiction by the State of Texas, California was, in fact, the appropriate forum for a child custody determination. *See, also, Steiner v. Steiner,* 89 *Cal.App.*3d 363, 369, 150 *Cal. Rptr.* 612, 616 (D.Ct.App.1979).

Finally, we attach no significance to the abandonment of the California proceedings by defendant and her return to New Jersey with Carly even though that precipitous withdrawal without the courtesy of notice to the judge, and even though carried out on the advice of California counsel, led to the unfortunate result with which all are faced here.

Beyond all of the problems of comity and proper exercise of jurisdiction under the act, we are first concerned with the best interests of Carly. The record before us indicates that those interests are best protected here.

The order appealed is reversed and the matter remanded to the Chancery Division, Morris County, for appropriate proceedings.