**Gary A. HANGSLEBEN, Sr., Plaintiff and Appellant,**

v.

**Delores Haugo OLIVER, Vincent Haugo, and Alice Haugo, Defendants and Appellees.**

Civ. No. 920366.

Supreme Court of North Dakota.

July 1, 1993.

Jonathan Garaas of Garaas Law Firm, Fargo, for plaintiff and appellant.

Delores Haugo Oliver, no appearance.

VANDE WALLE, Chief Justice.

Gary S. Hangsleben, Sr., appealed from a district court order which dismissed his action brought under the Uniform Child Custody Jurisdiction Act [UCCJA] to modify a Minnesota custody order. We affirm.

Delores H. Oliver and Gary were married in 1980, and a daughter, Christine, was born in 1981. Delores and Gary received a divorce in Clay County, Minnesota, in 1982. Delores was awarded the sole care, custody and control of Christine.

In violation of an order awarding Delores temporary custody, Gary absconded with Christine in August 1982 and failed to return her until June 1983. During the interim, Gary took Christine to various states and foreign countries. It was later determined that Christine was subjected to emotional and sexual abuse, and that "[t]he preponderance of [the] evidence was that the sexual abuse was sustained by the child at the hands of the Respondent [Gary]." Gary was charged with kidnapping in a Minnesota trial court, found guilty, and received a stayed imposition of sentence. Thereafter, a restraining order was issued against him.

Gary sought a modification of the divorce order, and, in late 1984, a Minnesota trial court continued Delores's exclusive custody without visitation afforded to Gary, prohibited Gary from harassing Delores or seeing Christine, and further provided that:

"The Court shall consider modification of the Judgment and Decree with respect to visitation ... only upon it having been shown to the Court that the Respondent [Gary] has undergone intensive psychotherapy by competent experts in the field of intrafamilial abuse."

Gary appealed to the Minnesota Court of Appeals, which ruled that the evidence of the repeated and extreme sexual abuse which Gary inflicted upon Christine supported the trial court's restriction of visitation. *In re Marriage of Haugo,* No. C2–89–562, 1989 WL 109334 (Minn.Ct.App. Sept. 26, 1989).

Delores and Christine moved to Hawaii in 1987. Against Delores's wishes, Gary followed Delores and Christine to Hawaii, resided within one block of them, and began attending their church. A Hawaii court later termed this action by Gary "extreme insensitivity." Gary currently resides in East Grand Forks, Minnesota.[1]

In 1987, Gary again filed a motion for modification in Minnesota. The trial court continued Gary's modification motion until August 15, 1987, to permit Gary to identify an expert for an evaluation touching upon his fitness in regard to visiting Christine. In 1988, a Minnesota trial court concluded that Gary had not undergone therapy, and that the best interests of Christine did not dictate either supervised or unsupervised visitation with Gary.

In 1989, Gary again filed a motion for modification in Minnesota, and the motion was again denied because Gary did not present any new evidence of compliance with the 1984 counseling order.

On October 4, 1990, Gary registered the 1989 Minnesota order in Hawaii and filed a motion asking the Hawaii court to modify the order under the UCCJA to allow for visitation. On October 25, 1990, a Minnesota court issued an order which relinquished its jurisdiction in favor of the State of Hawaii. Gary's motion was withdrawn without prejudice on October 29, 1990, because Gary did not supply proof of the required counseling with the motion.

In June 1991, Christine was sent to live with Delores's parents on their farm in North Dakota due to Gary's proximity in Hawaii and the adverse effect he was apparently having upon her. Christine attended school in North Dakota that fall and took part in various extra-curricular, community, and church activities.

In August 1991, Gary filed a motion in Hawaii seeking again to modify the Minnesota order. Accompanying the motion was a one-page letter from a qualified expert in sexual abuse stating that Gary had completed his individualized intensive psychotherapy in the field of intrafamilial abuse. The psychotherapist's full report received into evidence at the hearing was rather guarded in its diagnosis. The report noted that Gary scored significantly below the average on one measure of general credibility tests and that he demonstrated some cognitive distortions regarding sexual-offense behavior. There was no evidence presented to indicate that Gary has ever acknowledged responsibility for traumatizing Christine by sexual abuse or by the extended abduction. The court noted that although the Minnesota restraining orders prohibiting Gary from harassing Delores, prohibiting him from living within one mile of Delores, and prohibiting him from seeking to visit the child, "may no longer be in effect," Gary "manifested extreme insensitivity to the child's best interest by moving so close that she must be afraid to leave her house without an escort and is likely to see him 'in the neighborhood.'" Further, the Hawaii court observed that because of Gary's move to Hawaii and the indifference he has shown, Delores "acted appropriately under the circumstances in sending Christine to spend this coming school year in North Dakota with family members." The Hawaii court issued an order denying Gary's motion to modify visitation.

---

**1.** At oral argument, Gary's counsel contended that he actually resides in Grand Forks, North Dakota, stating that his testimony at the trial court level clearly indicated his North Dakota residency. Nonetheless, the trial court, relying on other testimony presented, found that he was in fact a resident of East Grand Forks, Minnesota.

In November 1991, Gary filed an ex-parte petition for a temporary restraining order against Delores. This resulted in a temporary order which was later vacated and dissolved by a Hawaii court.

On April 23, 1992, Gary filed a motion in the District Court of Griggs County, North Dakota. He sought a modification of the Minnesota order pursuant to the UCCJA, codified at Chapter 14–14, NDCC, to grant him the physical care, custody and control of Christine. Gary alleged that because Christine had been in North Dakota for more than six months, North Dakota courts had acquired "home state" jurisdiction over Christine. NDCC § 14–14–03 [UCCJA § 3]. Gary also sought the appointment of a guardian ad litem and submitted a separate motion of change in cus-tody on March 31, 1992. Delores filed a motion to dismiss for lack of jurisdiction under the UCCJA, which the court granted after a hearing was held.

Christine returned to Hawaii in the summer of 1992.

Gary's appeal presents the single question of whether the court erred in declining jurisdiction under the UCCJA.

■ This case involves an interstate custody dispute. Before a court can proceed to the merits of an interstate custody dispute, it must first determine whether it has jurisdiction under the UCCJA, codified at NDCC 14–14 [2], and the Parental Kidnapping Prevention Act [PKPA], codified at 28 U.S.C. § 1738A.[3] *Catlin v. Catlin,* 494

2. Section 14–14–03(1), NDCC [UCCJA § 3(a)], reads in relevant part:
"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:
a. This state (1) is the home state of the child at the time of commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
c. The child is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected, dependent, or deprived; or
d. (1) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision a, b, or c, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that this court assume jurisdiction."

3. The relevant subsection of the PKPA, 28 U.S.C. § 1738A(c) reads:
"A child custody determination made by a court of a State is consistent with the provisions of this section only if—
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State.
(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section."

N.W.2d 581 (N.D.1992); *Larson v. Dunn,* 474 N.W.2d 34 (N.D.1991).

Under the UCCJA and the PKPA, a court must go through a multi-step process in determining whether to exercise jurisdiction.[4] First, a court must determine whether it has jurisdiction, and, if it finds that it does, it must then determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction. If there is a pending custody proceeding in another state, the petitioned state must stay its proceedings or decline jurisdiction. NDCC § 14–14–06 [UCCJA § 6], PKPA § 1738A(g). If another state has issued a decree, the court, in order to modify that decree, must apply the multi-step process contained in section 14–14–14, NDCC [UCCJA § 14],[5] and PKPA sections 1738A(c),[6] and (f).[7] Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, a determination must be made by the forum state whether it is appropriate to exercise jurisdiction in light of the convenience of the forum and the conduct of a parent. NDCC §§ 14–14–07, 08 [UCCJA §§ 7, 8]. *Dennis v. Dennis,* 387 N.W.2d 234 (N.D.1986) [*Dennis II* ]. *E.g., Moore v. Moore,* 186 Mich.App. 220, 463 N.W.2d 230 (1990); *In re Marriage of Schmidt,* 436 N.W.2d 99 (Minn.Ct.App.1989); *Neger v. Neger,* 187 N.J.Super. 133, 453 A.2d 1337 (1982); *In re Marriage of Hopson,* 110 Cal.App.3d 884, 168 Cal.Rptr. 345 (1980); *Carson v. Carson,* 29 Or.App. 861, 565 P.2d 763 (1977), *aff'd* 282 Or. 469, 579 P.2d 846 (1978); 1 John P. McCahey et al., *Child Custody & Visitation Law and Practice,* § 4.01[4] (1993).

## I.

If the state in which the child resides at the time of the commencement of the proceeding in that state becomes the child's home state, it has jurisdiction over the proceeding. NDCC § 14–14–03 [UCCJA § 3], PKPA § 1738A(c). Section 14–14–02(5), NDCC [UCCJA § 2(5) ], defines "home state" as:

> "... the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."[8]

A "person acting as a parent" is defined as a "person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody." NDCC § 14–

---

4. We have previously announced a two-pronged inquiry that a court must follow under similar circumstances. *See Dennis v. Dennis,* 387 N.W.2d 234 (N.D.1986) (*Dennis II* ). The following multi-step process merely incorporates another question which has always been required to be answered in all interstate custody disputes. This analysis more clearly denotes what a trial court must consider in such circumstances.

5. Section 14–14–14, NDCC [UCCJA § 14], reads: "1. If a court of another state has made a custody decree, a court of this state may not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

2. If a court of this state is authorized under subsection 1 and section 14–14–08 to modify a custody decree of another state, it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section 14–14–22."

6. *Supra* note 3.

7. PKPA § 1738A(f) reads as follows:

"A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."

8. PKPA section 1738A(b)(4) is substantially similar in its definition of "home state."

14–02(8) [UCCJA § 2(9)]; PKPA § 1738A(b)(6).

Because Christine was living with her grandparents, and not her "parents, a parent, or a person acting as a parent", the district court reasoned that North Dakota did not become her home state. This is too narrow a reading of the language of the UCCJA.

 Christine was placed with Delores's parents by Delores's own action and initiative. Through the voluntary action of Delores, her parents fed, clothed, and cared for Christine. Delores's parents have a right to Christine's custody superior to all except Delores through the voluntary action of Delores because their actions embody the common-sense definition of a "person acting as a parent." Therefore, Christine lived with "persons acting as parents" for more than six months, and, arguably at the time of the commencement of the proceeding, North Dakota was Christine's home state. Under our prior holdings, the "home state" of the child refers not to the state of the child's legal residence, but to the state of the child's actual physical presence. *Bergstrom v. Bergstrom*, 271 N.W.2d 546 (N.D.1978). Other states have reached a similar conclusion. *See Mark L. v. Jennifer S.*, 133 Misc.2d 454, 506 N.Y.S.2d 1020 (N.Y.Fam.Ct.1986) [maternal grandparents are "persons acting as parents"]; *In re B.R.F.*, 669 S.W.2d 240 (Mo.Ct.App.1984) [maternal grandmother who is caring for her grandchildren upon the mother's death fulfills a common sense definition of "person acting as a parent"]; *Priscilla S. v. Albert B.*, 102 Misc.2d 650, 424 N.Y.S.2d 613 (N.Y.Fam. Ct.1980) [cousin a temporary custodian of a child].

## II.

 The next step is to determine whether there is a custody proceeding pending or a custody decree issued in another state. *McCahey, supra.* There is no custody proceeding pending, but custody decrees have been issued by other states.

The original custody decree was entered in Minnesota, a UCCJA state, which relinquished all jurisdiction in this matter in favor of the Family Court of the First Circuit, State of Hawaii, on October 25, 1990. *See* Minn.Stat.Ann. §§ 518A.01 to 518A.25. Hawaii, also a UCCJA state, assumed jurisdiction of the matter by issuing its order on September 5, 1991, denying Gary's motion for modification after the initial-decree state, Minnesota, had relinquished its jurisdiction. *See* Haw.Rev.Stat. §§ 583–1 to 583–26.

Section 1738A(d) of the PKPA specifically expresses the clear intent to reserve authority to modify child custody determinations to the state which rendered a prior valid decree by stating:

"The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section *continues* as long as the requirement of subsection (c)(1) [that the state has jurisdiction as a matter of its own law] of this section continues to be met and such State remains the residence of the child or of any contestant."

PKPA § 1738A(d) [emphasis added]. Delores continues to reside in Hawaii, and statutory and case law of Hawaii indicate that Hawaii holds inherent continuing jurisdiction over its own custody decrees. Haw. Rev.St. §§ 571–11(3), 580–1, 580–11, 583–3; *Doe v. Roe*, 5 Haw.App. 610, 704 P.2d 940 (1985); *Napoleon v. Napoleon*, 59 Haw. 619, 585 P.2d 1270 (1978); *Cleveland v. Cleveland*, 57 Haw. 519, 559 P.2d 744 (1977); *Blackshear v. Blackshear*, 52 Haw. 480, 478 P.2d 852 (1971). Assuming that Hawaii's declination to modify the prior Minnesota order was a "decree" within the meaning of the UCCJA and PKPA, Hawaii has continuing jurisdiction over custody actions involving Christine. This includes the right to issue modification or changes in custody. PKPA § 1738A(c)(2)(E), (d) and (f). *See also Barndt v. Barndt*, 397 Pa.Super. 321, 580 A.2d 320 (1990).

However, assuming that Hawaii's declination to modify the prior Minnesota order was not a "decree" within the meaning of the UCCJA and PKPA, Minnesota retains jurisdiction over Christine's case as the original decree state. Gary continues to

reside in Minnesota, and statutory and case law of Minnesota indicate that Minnesota holds inherent continuing jurisdiction over its own custody decrees. Minn.Stat.Ann. § 518.18; *In re Marriage of Biscoe*, 443 N.W.2d 221 (Minn.Ct.App.1989); *Schmidt, supra; In re Marriage of Karon*, 435 N.W.2d 501 (Minn.1989).

Therefore it is possible under both the UCCJA and PKPA that North Dakota and Hawaii, or North Dakota and Minnesota, have concurrent jurisdiction over the same child custody determination. An argument can be made that because North Dakota is the home state of Christine, its connection with her is stronger than that of Hawaii or Minnesota. However, merely because North Dakota has home-state jurisdiction, it does not necessarily follow that North Dakota may exercise that jurisdiction. The PKPA provides that:

> "A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>
> (1) it has jurisdiction to make such a child custody determination; *and*
>
> (2) *the court of the other State no longer has jurisdiction,* or it has declined to exercise such jurisdiction to modify such determination."

PKPA § 1738A(f) [emphasis added]. Although North Dakota has home-state jurisdiction over Christine's case by virtue of North Dakota's home-state status, federal law has limited its authority in this particular kind of child custody case (i.e., cases where other states may validly exercise continuing jurisdiction and have not declined to do so under the PKPA) by positing exclusive authority to modify in the rendering state as a matter of federal law. *Dennis v. Dennis*, 366 N.W.2d 474, 478 (N.D.1985) [*Dennis I*] [Meschke, J., special concurrence]; *Cann v. Howard*, 850

S.W.2d 57 (Ky.Ct.App.1993) [home-state jurisdiction acquired by one state does not unilaterally deprive another state of continuing jurisdiction]; *Michalik v. Michalik,* 172 Wis.2d 640, 494 N.W.2d 391 (1993); *Marquiss v. Marquiss,* 837 P.2d 25 (Wyo. 1992); *Yurgel v. Yurgel,* 572 So.2d 1327 (Fla.1990) [UCCJA does not automatically terminate jurisdiction validly acquired merely because the child has resided outside the state for more than six months]; *In Interest of S.A.V.,* 798 S.W.2d 293 (Tex. Ct.App.1990); *Barndt, supra. See also, Dennis I, supra* at 477 [VandeWalle, J., concurring specially].[9]

We therefore need not determine whether Hawaii or Minnesota has continuing jurisdiction over this case. In either instance, North Dakota is pre-empted from exercising its jurisdiction.

## III.

After a court determines it has jurisdiction, and after a court determines that there are no contemporaneous proceedings or decrees from other states which would give those states jurisdiction over the matter, the third and final question a court must ask in adjudicating interstate custody disputes is whether it is appropriate to exercise jurisdiction. *Dennis II, supra;* McCahey, *supra* at § 4–01[4]. The inconvenient forum provision, NDCC § 14–14–07 [UCCJA § 7], and the unclean hands, child snatching, and parental misconduct provision, NDCC § 14–14–08 [UCCJA § 8], determine whether the exercise of jurisdiction is appropriate.[10] Because either Minnesota or Hawaii has exclusive continuing jurisdiction over this matter, this step need not be considered. However, the trial court did consider the convenience of this state's forum and its decision appears to rest in part

9. Under state law, authority to modify an existing decree is governed primarily by section 14–14–14, NDCC [UCCJA § 14]. As the Commissioners' Note to Section 6 of the UCCJA states, "once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 and 14 [NDCC §§ 14–14–08, 14]." This means that only one state—the state of continuing jurisdiction—has power to modify the custody decree. Only that state decides whether to decline the exercise of its jurisdiction in any particular

case. *Yurgel v. Yurgel,* 572 So.2d 1327 (Fla. 1990) *citing* Brigitte Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 Fam.L.Q. 203 (1981).

10. There is no child snatching on Gary's part with regard to Christine's presence in North Dakota.

thereon. But, assuming *arguendo*, that neither state has continuing jurisdiction, North Dakota would still not be the proper forum for this action.

In determining whether a forum is inconvenient, the court is to give paramount consideration to the court most able to act in the best interests of the children. NDCC § 14–14–01(1)(b) [UCCJA § 1(a)(2)]; *Dennis II, supra.* For this purpose, the court may take into account the guidelines of section 14–14–07(3), NDCC [UCCJA § 7(c)].[11]

The record and the circumstances presented in this case leave no doubt that North Dakota is not the more appropriate forum to modify custody. Hawaii was Christine's home state prior to her placement in North Dakota. NDCC § 14–14–07(3)(a) [UCCJA § 7(c)(1)]. The reason she is here is to avoid Gary, and this reason was deemed appropriate by a Hawaii court. Christine has a closer connection to Hawaii where she has lived for four years, as opposed to living in North Dakota for only one year. NDCC § 14–14–07(3)(b) [UCCJA § 7(c)(2)]. A court of a state has home-state jurisdiction if that state is the home state at the time of the commencement of the proceeding, but at the time of the hearing, Christine had returned or was about to return to Hawaii. Neither parent lives in North Dakota. NDCC § 14–14–07(3)(b) [UCCJA § 7(c)(2)]. There is more substantial evidence relating to Christine's future care, protection, training, and personal relationships in Hawaii where a court could inquire into Christine's school records, would have greater access to the testimony of acquaintances and neighbors of Delores and Christine, and discern a more accurate picture of Delores's and Christine's usual

lifestyle. NDCC § 14–14–07(3)(c) [UCCJA § 7(c)(3)]. Further, the exercise of jurisdiction in North Dakota would be difficult to justify in light of the purposes of the Act as codified at section 14–14–01(1)(f), NDCC [UCCJA § 1(6)]. These sections instruct the court to avoid the relitigation of custody decisions of other states as far as feasible. Gary has a history of relitigating the custody dispute with questionable motives.

For the reasons stated, the order of the trial court is affirmed.

SANDSTROM, MESCHKE and NEUMANN, JJ, concur.

RALPH J. ERICKSTAD, Surrogate Judge concurs in the result.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

11. Section 14–14–07(3), NDCC [UCCJA § 7(c)], reads:

"In determining whether it is an inconvenient forum, the court shall consider whether it is in the best interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others, whether:

a. Another state is or recently was the child's home state;

b. Another state has a closer connection with the child and his family or with the child and one or more of the contestants;

c. Substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

d. The parties have agreed on another forum which is no less appropriate; and

e. The exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 14–14–01."