1997 ND 167

**Stephanie R. DICKSON, Plaintiff and Appellant,**

v.

**Thomas A. DICKSON, Defendant and Appellee.**

**Civil No. 960237.**

Supreme Court of North Dakota.

Aug. 13, 1997.

Carol K. Larson of Pringle & Herigstad, PC, Minot, for plaintiff and appellant.

Thomas M. Tuntland, Mandan, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Stephanie Dickson appeals from an amended divorce judgment awarding "joint legal custody" to Stephanie and Thomas Dickson, requiring Stephanie Dickson to notify Thomas Dickson if the child were to be out of her care for more than 36 hours, and ordering Thomas Dickson to pay two-thirds of the child's noncovered medical expenses. She also appeals the trial court's denial of her attorney fees. We conclude "joint legal custody" has no legal meaning under North Dakota law. We affirm and remand for further proceedings.

I

[¶ 2] Stephanie and Thomas Dickson divorced in 1993. The district court awarded custody of their minor child to Stephanie Dickson and reasonable visitation to Thomas Dickson. The court ordered Thomas Dickson to pay $1600–per–month child support and to pay all noncovered medical expenses. In 1994, the court entered the first amended judgment, specifically defining the conditions of visitation.

[¶ 3] On August 28, 1995, the court issued a second amended judgment, allowing Stephanie to move to New York with the child and modifying child support and visitation accordingly. Stephanie Dickson and the child moved back to North Dakota on November 8, 1995. Stephanie Dickson moved the court to reinstate visitation as specified under the first amended judgment and to reinstate child support as ordered under the original divorce judgment.

[¶ 4] The court entered a third amended judgment on June 28, 1996, in which it awarded "joint legal custody," with physical custody primarily to Stephanie Dickson. If the child were to be out of Stephanie Dickson's care for more than 36 hours, the court required her to contact Thomas Dickson to allow him to exercise visitation during that time. Thomas Dickson was to pay $1683–per–month child support.

[¶ 5] Stephanie Dickson appeals from the June 28, 1996, third amended judgment in McHenry County District Court. The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] We are first asked to decide whether the trial court erred in modifying the custody order from "sole legal custody" to "joint legal custody" without finding a significant change in circumstances. Be-

cause North Dakota law does not provide for "joint legal custody," we conclude, absent a definition provided by the trial court, "joint legal custody" is a meaningless amorphism, and its award is without legal significance.

## A

[¶ 7] Under N.D.C.C. § 14–09–06.1:

"An order for custody of an unmarried minor child entered pursuant to this chapter must award the custody of the child to a person, agency, organization, or institution as will, in the opinion of the judge, promote the best interests and welfare of the child. Between the mother and father, whether natural or adoptive, there is no presumption as to who will better promote the best interests and welfare of the child."

[¶ 8] Unlike some other states, North Dakota law does not separate "physical custody" from "legal custody."[1] The majority of states which recognize a distinct "legal custody" define the term by statute. *See, e.g.,* Minn.Stat. Ann. § 518.003, subd. 3(a) (" 'Legal custody' means the right to determine the child's upbringing, including education, health care, and religious training"); Iowa Code Ann. § 598.41(5) ("Rights and responsibilities as legal custodian of the child include, but are not limited to, equal partic-

ipation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction"); Wis. Stat. Ann. § 767.001(2) and (2m) (" 'Legal custody' means: (a) ... the right and responsibility to make major decisions concerning the child," including "decisions regarding consent to marry, consent to enter military service, consent to obtain a motor vehicle operator's license, authorization for nonemergency health care and choice of school and religion"); S.D. Codified Laws § 25–5–7.1 ("the court may order joint legal custody so that both parents retain full parental rights and responsibilities with respect to their child and so that both parents must confer on major decisions affecting the welfare of the child"); Cal. Fam.Code § 3003 (" 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child"). A few states have crafted judicial definition of the term. *See Taylor v. Taylor,* 306 Md. 290, 508 A.2d 964, 967 (1986) ("Embraced within the meaning of 'custody' are the concepts of 'legal' and 'physical' custody"); *Bird v. Starkey,* 914 P.2d 1246, 1250 n. 6 (Alaska 1996) (concluding "joint custody" statute includes "joint legal custody"); *Matter of Alexandria H.,* 159 Misc.2d 345, 604 N.Y.S.2d 471, 472

---

1. Twenty-four states define "legal custody" by statute. *See* Cal. Fam.Code §§ 3003, 3006 (defining "joint legal custody" and "sole legal custody"); Colo.Rev.Stat. § 14–10–123.5 (defining "joint custody" as "legal custody"); Conn. Gen. Stat. 46b–56a (recognizing "legal custody"); Ga. Code Ann. § 19–9–6(2) (defining "joint legal custody"); Idaho Code § 32–717B(3) (defining "joint legal custody"); Ind.Code § 31–1–11.5–21(f) (defining "joint legal custody"); Iowa Code Ann. § 598.41(5) (defining "legal custody"); La. Ch.Code Art. 1511(2) (defining "legal custody"); Mass. Gen. Laws 208 § 31 (defining "sole legal custody" and "joint legal custody"); Mich. Comp. Laws Ann. § 722.26a(7) (defining "joint custody" using legal custody terms); Minn.Stat. Ann. § 518.003, subd. 3(a) (defining "legal custody"); Miss.Code Ann. § 93–5–24(5)(d) (defining "legal custody"); Mo. Ann. Stat. § 452.375(*l*) (defining "joint legal custody"); Nev.Rev.Stat. Ann. § 125.510 (recognizing "joint legal custody"); N.H.Rev.Stat. Ann. § 458:17(III) (defining "joint legal custody"); N.J. Stat. Ann. § 9:2–4(a)(2) (defining "legal custody"); N.M. Stat. Ann. § 40–4–9.1 L(2) (defining "joint custody" using legal custody terms); Or.Rev.Stat. § 107.169 (defining "joint custody" using legal

custody terms); 23 Pa. Cons.Stat. Ann. § 5302 (defining "legal custody"); S.D. Codified Laws § 25–5–7.1 (defining "joint legal custody"); Utah Code Ann. § 30–3–10.3 (specifying terms of a "joint legal custody" order); Vt. Stat. Ann. 15 § 664 (defining "legal responsibility"); Va.Code Ann. § 20–124.1 (defining "joint legal custody"); Wis. Stat. Ann. § 767.001(2) (defining "legal custody").

Five states define "legal custody" by case law. *See Bird v. Starkey,* 914 P.2d 1246 (Alaska 1996) (n.6 legislative history recognizes legal custody); *Taylor v. Taylor,* 306 Md. 290, 508 A.2d 964 (1986) (defining "joint legal custody"); *In re Marriage of Saylor,* 232 Mont. 294, 756 P.2d 1149 (1988); *Trapp v. Trapp,* 136 A.D.2d 178, 526 N.Y.S.2d 95 (1988) (defining "joint legal custody"); *Shepherd v. Metcalf,* 794 S.W.2d 348 (Tenn.1990) (recognizing "joint legal custody").

The following do not appear to provide for "legal custody" by statute nor define "legal custody" by case law: Alabama, Arizona, Arkansas, Delaware, District of Columbia, Florida, Hawaii, Illinois, Kansas, Kentucky, Maine, Nebraska, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Carolina, Texas, Washington, West Virginia, and Wyoming.

(Fam.Ct.1993) (defining "joint legal custody").

[¶ 9] In matters involving child custody, this Court will look to the intent of the legislature. *See Boeddeker v. Reel,* 517 N.W.2d 407, 410 (N.D.1994) (recognizing legislative intent in custody proceedings under N.D.C.C. Title 14). We will not graft onto our law separate "legal custody," absent legislative approval. The North Dakota Legislature has not divided custody into "physical custody" and "legal custody," and we decline to do so.

### B

[¶ 10] Trial courts do, however, have the authority to allocate various reasonable rights to the noncustodial parent. *See* N.D.C.C. § 14–05–22 ("In an action for divorce, the court ... may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper"); *Reinecke v. Griffeth,* 533 N.W.2d 695, 697 (N.D.1995) (granting visitation rights to noncustodial parent); *Perala v. Carlson,* 520 N.W.2d 839, 841 (N.D.1994) (granting noncustodial parent the right to claim the child as a dependent on income tax return). If a trial court allocates such reasonable rights, even if it chooses to characterize the allocation as "joint legal custody," those allocations are effective. *See, e.g., Olson v. Olson,* 361 N.W.2d 249, 251 (N.D.1985) (trial court defined "joint legal custody" as the "responsibility to participate in all major decisions affecting [the child]"). This Court cautioned, " '[s]pecific conditions imposed concerning custody arrangements and visitation rights can only be justified and made workable through the combined efforts of the parents.' " *Olson* (quoting *Lapp v. Lapp,* 293 N.W.2d 121, 131 (N.D.1980)).

[¶ 11] In this case, the trial court rejected the parties' proposed definitions and granted "joint legal custody" without definition. Absent a specific definition of its meaning, we conclude the judge's pronouncement, "I award joint legal custody," is a meaningless amorphism. We believe, however, the trial court probably intended to grant to Thomas Dickson specific rights which it did not enumerate. For the proper disposition of this case, therefore, we remand for the trial court to specify the rights granted to Thomas Dickson.

### C

[¶ 12] Generally, modification of custody requires the trial court to find a significant change of circumstances in which the child's best interests compel a change in custody. *Lovin v. Lovin,* 1997 ND 55, ¶ 16, 561 N.W.2d 612; *Loll v. Loll,* 1997 ND 51, ¶ 12, 561 N.W.2d 625. Because the judge's pronouncement of "joint legal custody" was meaningless, there has been no modification in this case, and we need not address whether there had been a significant change of circumstances.

### III

[¶ 13] The trial court ordered, "[w]hen [the child] shall be out of plaintiff's care for more than 36 hours, plaintiff shall contact the defendant at least 48 hours in advance to inquire if he would like to exercise visitation during this time period." Stephanie Dickson argues this is not in the best interest of the child because it will not allow the child to spend extended periods of time with others as she grows older.

[¶ 14] We will not reverse an order specifying the conditions of visitation unless the decision is clearly erroneous. *Reinecke* at 699; N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on review of the entire evidence, the reviewing court is left with a definite and firm conviction a mistake has been made." *Steffes v. Steffes,* 1997 ND 49, ¶ 8, 560 N.W.2d 888.

[¶ 15] The district court ordered the second amended judgment in contemplation of Stephanie Dickson moving to New York, and the court modified visitation accordingly. However, she moved back to North Dakota with the child. Stephanie and Thomas Dickson now live in the same city. This condition of visitation is now reasonable and workable. We conclude the record supports the court's implementation of this condition of visitation,

and we are not convinced a mistake has been made. Therefore, we affirm.

## IV

[¶ 16] Under the original, stipulated divorce judgment, the court ordered Thomas Dickson to pay all the child's noncovered medical expenses. In contemplation of Stephanie Dickson's move to New York, the court modified payment of medical expenses, ordering Thomas Dickson pay two-thirds of the child's noncovered medical expenses and Stephanie Dickson pay one-third. Stephanie Dickson did not appeal the reduction. Stephanie Dickson now argues the trial court erred in refusing to reinstate Thomas Dickson's obligation to pay all the child's medical expenses upon her return to North Dakota.

[¶ 17] In its memorandum opinion of June 21, 1996, the district court found, under the guidelines, Thomas Dickson had a $1,683–per–month child support obligation. It ordered him to pay $1,683 per month plus two-thirds of noncovered medical expenses. Thus, the court's order of additional payment of noncovered medical expenses is an upward deviation from the guideline amount. N.D. Admin. Code § 75–02–04.1–09(2) provides a list of criteria that would justify a deviation from the amount of child support as calculated under the guidelines. *Dalin v. Dalin,* 545 N.W.2d 785, 787 (N.D.1996). Nothing in the record indicates any of these criteria would apply in this case. One of the items justifying an upward deviation is "[t]he increased needs of children with disabling conditions or chronic illness." N.D. Admin. Code § 75–02 04.1–09(2)(d). Stephanie Dickson offered no evidence of this or other grounds justifying an upward deviation from the guidelines, and offered no authority under the child

support guidelines to justify the payment she seeks. Therefore, we affirm.[2]

## V

[¶ 18] Finally, Stephanie Dickson argues the trial court abused its discretion in denying her attorney's fees. A trial court may award attorney's fees under N.D.C.C. § 14–05–23. "The trial court's decision regarding costs and attorney fees in a divorce action will not be disturbed on appeal unless it is affirmatively established that the trial court abused its discretion." *Simons v. Gisvold,* 519 N.W.2d 585, 588 (N.D.1994).

[¶ 19] "The principal standards guiding an award of attorney fees in a divorce action are one spouse's need and the other's ability to pay." *Quamme v. Bellino,* 540 N.W.2d 142, 148 (N.D.1995). In this case, the court found "at the time of the original divorce the plaintiff was at a disadvantage economically," however, "the plaintiff has been taking educational courses at her own choosing, rather than working full time [and][t]he Court does not find any obligation on the part of the defendant to help the plaintiff financially." Because the court's denial of attorney's fees was not an abuse of discretion, we affirm.

## VI

[¶ 20] Concluding the trial court's award of "legal custody" without definition has no legal significance, we affirm and remand for further proceedings.

[¶ 21] VANDE WALLE, C.J., NEUMANN and MARING, JJ., and MAURICE R. HUNKE, District Judge, concur.

---

2. Under N.D. Admin. Code § 75–02–04.1–01(7)(e), payments of actual medical expenses are credited toward the obligor's monthly gross income for purposes of calculating the obligor's net monthly income. *Steffes v. Steffes,* 1997 ND 49, ¶ 35, 560 N.W.2d 888. The trial court did not make findings of monthly gross income or indicate the medical expenses were calculated as they should have been under the guidelines in computing Thomas Dickson's net monthly income. *See* N.D. Admin. Code § 75–02–04.1–01(7) (" 'Net income' means total gross monthly income less: ... (e) Payments made on actual medical expenses of the child or children for whom support is being sought"); *see also Perala v. Carlson,* 520 N.W.2d 839, 841 (N.D.1994) (" 'factors identified as not having been considered in developing the child support guidelines schedule ... may be included as criteria' " elsewhere (quoting Attorney General Opinion 93–22 (1993))). However, Thomas Dickson does not argue the court erred in not calculating payments for medical expenses into his monthly net income.

[¶ 22] MAURICE R. HUNKE, District Judge, sitting in place of MESCHKE, J., disqualified.