1997 ND 197

**Stephanie ZIMMERMAN, Plaintiff and Appellant,**

v.

**Mark NEWTON, Defendant and Appellee.**

**Civil No. 970042.**

Supreme Court of North Dakota.

Oct. 21, 1997.

Daniel J. Chapman (argued), of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Theresa L. Zimmerman (argued), of American Legal Services, Bismarck, for defendant and appellee.

MESCHKE, Justice.

[¶ 1] Stephanie Zimmerman appealed a memorandum opinion and order dismissing her action against Mark Newton for custody of their minor child, Chelsey. We hold the trial court did not err in declining to exercise jurisdiction because a proceeding for custody of Chelsey was pending in Massachusetts when Zimmerman filed this North Dakota action. We affirm.

[¶ 2] Zimmerman and Newton have never been married. According to Zimmerman, she met Newton, who was from Massachusetts, while he was living in Elgin, North Dakota. Chelsey was conceived during their relationship, and Zimmerman moved to Massachusetts with Newton. On April 20, 1994, Chelsey was born in Massachusetts.

[¶ 3] In a Massachusetts family court proceeding on February 23, 1996, after Zimmerman and Newton experienced difficulties in their relationship, they stipulated that Newton was Chelsey's natural father and that they "will have shared physical legal custody" of Chelsey with each parent having "physical possession" for six months of the year. They also stipulated that Zimmerman be allowed to remove Chelsey from Massachusetts to reside in North Dakota while Chelsey is in her "physical possession," and that Newton pay Zimmerman child support while Chelsey is in Zimmerman's "physical possession." The Massachusetts court signed a temporary order incorporating the parties' stipulation "[p]ending a hearing on the merits or until further order of the court." The Massachusetts court also issued an income assignment and an order for support requiring Newton to pay Zimmerman $55 per week in child support from March 1, 1996, to September 1, 1996. Later, on October 22, 1996, the Massachusetts court entered a "judgment of paternity" that incorporated the parties' stipulation, but inexplicably decreed Zimmerman and Newton would have "shared joint legal custody" while Zimmerman would have "sole physical custody." [1]

[¶ 4] Meanwhile, Zimmerman moved back to North Dakota with Chelsey, and on August 27, 1996, she filed this North Dakota custody case against Newton. Zimmerman's complaint acknowledged the Massachusetts proceeding, but alleged she was not aware of a final order by the Massachusetts court and claimed that proceeding had been abandoned because all of the parties had returned to North Dakota. She alleged that she had lived with Chelsey in North Dakota for the preceding six months and that Massachusetts was an inconvenient forum to decide custody. Zimmerman obtained an interim ex parte order from the North Dakota court on August 28, 1996, placing temporary custody of Chelsey with her pending further order of the court.

[¶ 5] Zimmerman's complaint and the interim order were not formally served on

---

1. We have recently held that a designation of "joint legal custody" in a North Dakota custody decree is meaningless "[a]bsent a specific defini-tion." *Dickson v. Dickson,* 1997 ND 167, ¶ 11, 568 N.W.2d 284.

Newton until November 19, 1996. Newton then appeared specially and moved to dismiss Zimmerman's action. He contended he had been given joint custody of Chelsey under the Massachusetts stipulation and its October 22, 1996 judgment, which had been since filed in Grant County, North Dakota. *See* NDCC 14–14–15. Newton asserted the North Dakota court lacked jurisdiction under NDCC 14–14–06 because a custody proceeding about Chelsey was pending in Massachusetts when Zimmerman filed her North Dakota action.

[¶ 6] The trial court agreed with Newton and dismissed Zimmerman's action, ruling NDCC 14–14–06 precluded it from exercising jurisdiction:

> It seems rather clear now that at the time this action was commenced in North Dakota, there was a proceeding pending in the State of Massachusetts in the Probate and Family Court Department of the Trial Court of the Essex County Division, Docket No. 96W–0343–PA1. The action in Massachusetts was an action concerning custody of [Chelsey], the minor child of the parties. At the time the proceedings were commenced in Massachusetts, Massachusetts was the home state of Mark Newton, [Chelsey] and Stephanie Zimmerman.

> The pending proceedings in the State of Massachusetts was not stayed by the court in Massachusetts for any reason. Therefore, this court should not have exercised its jurisdiction.

Zimmerman appealed the memorandum opinion and order dismissing her action.[2]

[¶ 7] Zimmerman contends the trial court erred in dismissing her action without an evidentiary hearing on whether a prior custody proceeding was pending in Massachusetts. She argues whether a prior action is pending is a factual question that requires a hearing. She also asserts an evidentiary hearing is necessary to explore whether North Dakota has jurisdiction under the "home state" or

"significant connection" provisions of NDCC 14–14–03.

[¶ 8] This is an interstate custody dispute. Before a court can decide the merits of an interstate custody dispute, it must first address the related jurisdictional requirements of the Uniform Child Custody Jurisdiction Act (UCCJA), NDCC 14–14, and the Parental Kidnapping Prevention Act (PKPA), 28 USC 1738A. *Hangsleben v. Oliver*, 502 N.W.2d 838, 841 (N.D.1993). In *Hangsleben*, 502 N.W.2d at 842 (footnotes omitted), we outlined the multi-step analysis for jurisdiction in interstate custody disputes:

> Under the UCCJA and the PKPA, a court must go through a multi-step process in determining whether to exercise jurisdiction. First, a court must determine whether it has jurisdiction, and, if it finds that it does, it must then determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction. If there is a pending custody proceeding in another state, the petitioned state must stay its proceedings or decline jurisdiction. NDCC § 14–14–06 [UCCJA § 6], PKPA § 1738A(g). If another state has issued a decree, the court, in order to modify that decree, must apply the multi-step process contained in section 14–14–14, NDCC [UCCJA § 14], and PKPA sections 1738A(c), and (f). Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, a determination must be made by the forum state whether it is appropriate to exercise jurisdiction in light of the convenience of the forum and the conduct of a parent. NDCC §§ 14–14–07, 08 [UCCJA §§ 7, 8].

Thus, procedurally, a court must first consider whether it has jurisdiction to decide custody and, if it does, the court must then decide, within the framework of the UCCJA and the PKPA, whether to exercise its jurisdiction.

[¶ 9] A North Dakota court has jurisdiction to make an interstate custody deci-

**2.** We have appellate jurisdiction if a memorandum opinion includes an order that is intended to be final. *See Retzlaff v. Grand Forks Pub. Sch. Dist. # 1*, 424 N.W.2d 637, 638 (N.D.1988); *Kaiser v. State*, 417 N.W.2d 175, 177 (N.D.1987).

An order dismissing an action involves the merits of an action and is appealable under NDCC 28–27–02(5). *Retzlaff*, 424 N.W.2d at 638, n. 1. The trial court's decision manifests finality, and we therefore have jurisdiction of this appeal.

sion by initial decree or by modification of an initial decree if North Dakota is the "home state," or there is a "significant connection" with this state. NDCC 14–14–03.[3] Here, the North Dakota trial court did not specifically address whether it had jurisdiction under NDCC 14–14–03. Instead, the court effectively assumed it had jurisdiction under NDCC 14–14–03, but decided it should not exercise that jurisdiction because, under NDCC 14–14–06, there was a custody proceeding pending in Massachusetts when Zimmerman filed her North Dakota petition. For this appeal, we too assume, without deciding, that the North Dakota court had jurisdiction under NDCC 14–14–03, and we consider whether the court erred in deciding it should not exercise jurisdiction under NDCC 14–14–06. In this posture, we reject Zimmerman's argument an evidentiary hearing was necessary to consider whether North Dakota is Chelsey's "home state" or whether there is a "significant connection" with North Dakota because an affirmative answer to either question would not affect this appeal.[4]

[¶ 10] When there is a simultaneous custody proceeding in another state, NDCC 14–14–06 directs what the North Dakota court must do:

1. A court of this state may not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

2. Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties under section 14–14–09 and shall consult the child custody registry established under section 14–14–16 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

3. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issues may be litigated in the more appropriate forum and that information be exchanged in accordance

---

**3.** The relevant parts of NDCC 14–14–03 direct:
1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:
a. This state (1) is the home state of the child at the time of commencement of the proceeding, ...
b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

\*  \*.  \*  \*  \*  \*

2. Except under subdivisions c and d of subsection 1, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

NDCC 14–14–02(5) defines "home state" as
the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

**4.** For the same reason, we also reject Zimmerman's claim she was entitled to cross-examine Newton on a document that she contends shows he agreed to jurisdiction in the North Dakota court. As we explained in *Larson v. Dunn*, 474 N.W.2d 34, 39 (N.D.1991), subject matter jurisdiction cannot be conferred by the parties' agreement.

with sections 14–14–19 through 14–14–22. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state, it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the most appropriate forum.

[¶ 11] A strong policy against simultaneous custody proceedings in different states is implemented by these specific directions in NDCC 14–14–06, which require active communication between the separate courts before exercising jurisdiction to decide an interstate custody dispute.[5] *See* 9 Uniform Laws Annotated, UCCJA, Prefatory Note (1988). The UCCJA Comment for NDCC 14–14–06, 9 U.L.A. at p. 220, explains:

> Because of the havoc wreaked by simultaneous and competitive jurisdiction which has been described in the Prefatory Note, this section seeks to avoid jurisdictional conflict with all feasible means, including novel methods. Courts are expected to take an active part under this section in seeking out information about custody proceedings concerning the same child pending in other states. In a proper case jurisdiction is yielded to the other state either under this section or under section 7 [NDCC 14–14–07]. Both sections must be read together.
>
> When the courts of more than one state have jurisdiction under sections 3 [NDCC 14–14–03] or 14 [NDCC 14–14–14], priority in time determines which court will proceed with the action, but the application of the inconvenient forum principle of section 7 [NDCC 14–14–07] may result in the handling of the case by the other court.
>
> While jurisdiction need not be yielded under subsection (a) if the other court would not have jurisdiction under the criteria of this Act, the policy against simultaneous custody proceedings is so strong that it

might in a particular situation be appropriate to leave the case to the other court even under such circumstances. See subsection (3) and section 7 [NDCC 14–14–07].

Once a custody decree has been rendered in one state, jurisdiction is determined by sections 8 [NDCC 14–14–08] and 14 [NDCC 14–14–14].

[¶ 12] So, if a court in this state has reason to believe a simultaneous custody proceeding may be pending in a court in another state, NDCC 14–14–06 requires the court in this state to direct an inquiry to the court in the other state so that the issues will be litigated in the more appropriate forum. *See Smith v. Smith,* 534 N.W.2d 6, 9 (N.D.1995) (discussing propriety of communication between North Dakota and California courts for resolving interstate custody dispute). Considering the way this case developed, however, we are not persuaded the North Dakota court had to communicate with the Massachusetts court.

[¶ 13] At a January 27, 1997 hearing on Newton's North Dakota motion to dismiss, Zimmerman did not assert the North Dakota court had to communicate with the Massachusetts court. Instead, counsel for Zimmerman informed the North Dakota court about his communications to the Massachusetts court:

> [MR. CHAPMAN] I have asked for and received certified copies of all documents in the file in Massachusetts. Among these documents is a certificate of service [of a motion for summary judgment and scheduled hearing in the Massachusetts court on October 23, 1996,] by an attorney in Massachusetts to Stephanie Zimmerman and that's dated September 24th of 1996. As a response to that, I mailed to the court and the court has acknowledged receiving from me, a notification that there was an action pending here in North Dakota. Apparently no consideration was given to that.
>
> THE COURT: When did you send that notice in?

5. Many other provisions of the UCCJA detail the need for active communication between courts of the different states for deciding multi-state jurisdictional questions in custody cases. *See* NDCC 14–14–01(1)(b) and (h); 14–14–07(4) and (9); 14–14–16; and 14–14–17 through 14–14–22.

MR. CHAPMAN: Sent it on October 2nd of 1996. I have a return receipt indicating that I sent out a letter to the court in Massachusetts. What I indicated to the court in Massachusetts is that the child has resided for the past six months in North Dakota and the home state under the statute would thereby be North Dakota and that the Massachusetts court had no jurisdiction. I don't know, of course, what the Massachusetts court did with regard to the notice that I sent to them.

THE COURT: I can tell you for yours and Mr. Tuntland's information, personally I have not received any kind of contact from any court in Massachusetts and I see nothing in the file where they responded with anything to this Court.

After counsel had communicated with the Massachusetts court, the Massachusetts court did not stay its proceedings and instead entered the October 22, 1996 custody judgment.

[¶ 14] The UCCJA "expect[s courts] to take an active part ... in seeking out information about custody proceedings concerning the same child pending in other states." UCCJA Comment to NDCC 14–14–06, 9 U.L.A. at p. 220. We also expect our North Dakota courts to communicate with courts of other states on the record to identify the more appropriate forum. *See Smith*, 534 N.W.2d at 9. Here, the Massachusetts court entered its judgment after communication from Zimmerman's counsel, before Zimmerman formally served her action and the interim order on Newton, and three months before a hearing on Newton's motion to dismiss in North Dakota. Despite these communications by Zimmerman's counsel, the Massachusetts court did not stay its proceeding. Thus, when the North Dakota court took this matter under advisement, it was no longer necessary for the North Dakota court to communicate with the Massachusetts court

to see if Massachusetts would stay its proceeding.

[¶ 15] Zimmerman does not contest the authenticity of the documents in this record from the Massachusetts proceeding. In fact, she attached to her complaint the parties' February 1996 stipulation and the Massachusetts court's temporary order specifying the order was in effect "[p]ending a hearing on the merits or until further order of the court." Those documents unequivocally show, as a matter of law, when Zimmerman filed her North Dakota action, "a proceeding concerning the custody of the child was pending in a court" in Massachusetts.[6]

[¶ 16] Generally, priority in time identifies the most appropriate court to decide an interstate custody dispute under the UCCJA. Zimmerman cannot seriously dispute the Massachusetts action was begun before this one in North Dakota. Although Zimmerman argues these parents had abandoned the Massachusetts proceeding, her argument is squarely contradicted by that court's October 1996 custody judgment. Zimmerman, in effect, would have a North Dakota court decide these parents had abandoned the Massachusetts proceeding despite an unequivocal record to the contrary. Her unsupported argument ignores the UCCJA framework for deciding multi-state jurisdictional questions in custody cases. We reject Zimmerman's argument she was entitled to an evidentiary hearing to decide if an action was pending in Massachusetts when she filed her action in North Dakota.

[¶ 17] Zimmerman also contends the Massachusetts court was not exercising jurisdiction substantially in conformity with the UCCJA. Her argument has no support in this record. These parents were both living in Massachusetts when they made the February 1996 stipulation. Massachusetts has been a UCCJA state since 1983. *See* UCCJA, Table of Jurisdictions Where Act Has

---

6. Zimmerman's summons and complaint were filed with the Clerk of Court of Burleigh County on August 27, 1996. A return of service certifies Newton was served with the summons and complaint and the interim order on November 19, 1996. Under NDRCivP 3 an action is ordinarily commenced by the service of the summons. *Anderson v. Anderson*, 449 N.W.2d 799, 802

(N.D.1989). *Compare* FRCivP 3 ("civil action is commenced by filing a complaint with the court"). Our state's distinctive procedure for commencement of an action does not change our analysis of whether there was a simultaneous proceeding pending in Massachusetts because the unambiguous directive of NDCC 14–14–06 is triggered at "the time of filing" in North Dakota.

Been Adopted, 9 U.L.A. at p. 115; Mass.Gen. Laws Ann. Ch. 209B (1994). Zimmerman's stipulation in the Massachusetts case belies and contradicts her unsupported argument she did not receive notice of that proceeding. *Compare Larson v. Dunn,* 474 N.W.2d at 39 ("Personal jurisdiction over a person is acquired ... if a [person] makes a voluntary general appearance and fails to assert the lack of personal jurisdiction."). Zimmerman's claim she was not represented by counsel in Massachusetts does not evidence that the Massachusetts court was not exercising jurisdiction substantially in conformity with the UCCJA, and she has cited nothing in this record to support her bare assertion. We conclude the North Dakota trial court did not err in refusing to exercise jurisdiction of this interstate custody dispute because another prior proceeding about the custody of this child was pending in Massachusetts when Zimmerman filed this petition.[7]

[¶ 18] We affirm the order dismissing Zimmerman's action.

[¶ 19] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.

---

7. When the North Dakota court dismissed this case, the Massachusetts court had already rendered a custody judgment. Zimmerman did not seek to amend her pleading to modify the Massachusetts custody judgment, *see* NDCC 14–14–14, and she has not contended the North Dakota court erred in failing to decide this case under NDCC 14–14–08 and 14–14–14. *See* UCCJA Comment to NDCC 14–14–06, 9 U.L.A. at p. 220 ("Once a custody decree has been rendered in one state, jurisdiction is determined by sections 8 [NDCC 14–14–08] and 14 [NDCC 14–14–14]"). *See also Hangsleben,* 502 N.W.2d at 843–45 (discussing analysis when custody decree has been issued by another state). Accordingly, we do not address that issue.