1999 ND 79

**Michael LUNA, Plaintiff and Appellant,**

v.

**Darla LUNA, n/k/a Darla Allen, Defendant and Appellee.**

**No. 980204.**

Supreme Court of North Dakota.

April 27, 1999.

Tom P. Slorby, Minot, N.D., for plaintiff and appellant.

Debra K. Edwardson, Edwardson Law Office, Minot, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Michael Luna appeals from an amended judgment modifying and awarding custody of a minor child to Darla Luna. Because the district court had jurisdiction, and the change of custody was in the child's best interests, we affirm the decision of the district court.

I

[¶ 2] Michael and Darla Luna were married in 1988 and divorced in February 1994 in Minot, North Dakota. The parties were granted "joint custody" of their daughter, born on November 8, 1988, with primary physical custody awarded to Michael Luna.[1] In December 1994, upon his separation from active Air Force duty, the district court granted Michael Luna's motion to change the residence of his daughter to New Hampshire. Following the divorce, Michael Luna married Lori Luna, who also had a child from a previous marriage. The couple eventually moved to Pennsylvania.

[¶ 3] In February 1997, Northwest Judicial District Court Judge Gary Holum issued an interim ex parte order granting temporary custody to Darla Luna, based upon her claim that her daughter, who was not in North Dakota at that time, had been abandoned. Darla Luna went to Pennsylvania and brought her back to North Dakota. Michael Luna requested a hearing on the necessity of the order, requested a change of judge, and moved the court to dismiss for inconvenient forum. A hearing on Michael Luna's motion regarding the necessity of the interim order and motion to dismiss the temporary order was held before Northwest Judicial District Court Judge Wallace Berning on May 9, 1997.

[¶ 4] The district court found North Dakota had jurisdiction and was not an inconvenient forum. Darla Luna then moved for a continuance of 30 days for discovery. Ultimately, she did nothing but rest upon the temporary order, and never filed a petition or motion for a change of custody. On November 25, 1997, upon Michael Luna's motion, the court dismissed the action for failure to prosecute the matter. On December 8, 1997, Michael Luna returned to Pennsylvania with his daughter.

[¶ 5] On December 15, 1997, Darla Luna again moved for change of custody, and the motion was tried before Northwest Judicial District Court Judge Robert Holte. The matter came before the district court in Ward County on February 13, 1998. Michael Luna appeared by telephone, and his recently divorced wife, Lori Luna, was allowed to testify by deposition. In her deposition, Lori Luna testified she and Michael Luna were married for approximately 3½ years. She also testified she was the primary caretaker of Michael Luna's daughter—preparing her meals, bathing her nightly, doing her laundry, seeing to it that she got to school, and taking her to the doctor

---

1. The district court did not define the term "joint custody." Without definition, its grant is meaningless. *Dickson v. Dickson*, 1997 ND 167, ¶ 8, 568 N.W.2d 284.

when necessary. Lori Luna also testified regarding Michael Luna's reluctance to grant Darla Luna her court-ordered visitation.

[¶ 6] Lori Luna further testified that between 1995 and 1997, Michael Luna was working and going to school and frequently did not come home after work. When Michael and Lori Luna separated, Michael Luna's daughter stayed with Lori Luna and her child. Further, Lori Luna testified she was physically abused by Michael Luna. She eventually sought and was granted a court protection order. Although the protection order was issued without making any findings, Lori Luna was granted the family residence, and Michael Luna was ordered to stay away from the residence for the term of the order, which was to expire in March 1998.

[¶ 7] Darla Luna testified Lori Luna contacted her through an attorney, who advised her that Michael and Lori Luna were separated and her daughter was living with Lori Luna, who was concerned because she had no legal right to the child's custody. The district court determined it had jurisdiction and applied the test to modify custody. The court found a significant change in circumstances and found it in the daughter's best interests to modify custody and make Darla Luna the custodial parent.

[¶ 8] Michael Luna appealed in a timely manner under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.

## II

[¶ 9] Michael Luna argues North Dakota does not have jurisdiction to decide the matter. Before the merits of an interstate custody dispute can be settled, jurisdiction must be determined. *Dahlen v. Dahlen,* 393 N.W.2d 765, 767 (N.D.1986). The threshold issue is whether the district court had jurisdiction to modify custody under the Uniform Child Custody Jurisdiction Act (UCCJA), codified as N.D.C.C. ch. 14–14, and the Parental Kidnapping Prevention Act (PKPA), codified as 28 U.S.C. 1738A. *See Zimmerman v. Newton,* 1997 ND 197, ¶ 8, 569 N.W.2d 700 (citing *Hangsleben v. Oliver,* 502 N.W.2d 838, 841 (N.D.1993)). In *Zimmer-*

*man,* we outlined the multi-step analysis for jurisdiction in interstate custody disputes:

> Under the UCCJA and the PKPA, a court must go through a multi-step process in determining whether to exercise jurisdiction. First, a court must determine whether it has jurisdiction, and, if it finds that it does, it must then determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction. If there is a pending custody proceeding in another state, the petitioned state must stay its proceedings or decline jurisdiction. NDCC § 14–14–06 [UCCJA § 6], PKPA § 1738A(g). If another state has issued a decree, the court, in order to modify that decree, must apply the multi-step process contained in section 14–14–14, NDCC [UCCJA § 14], and PKPA sections 1738A(c), and (f). Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, a determination must be made by the forum state whether it is appropriate to exercise jurisdiction in light of the convenience of the forum and the conduct of a parent. NDCC §§ 14–14–07, 08 [UCCJA §§ 7, 8].

*Id.* (quoting *Hangsleben,* at 842 (footnotes omitted)). "[P]rocedurally, a court must first consider whether it has jurisdiction to decide custody and, if it does, the court must then decide, within the framework of the UCCJA and the PKPA, whether to exercise its jurisdiction." *Id.*

[¶ 10] Congress enacted the PKPA to create a national standard for states to look to in interstate custody disputes and to solve problems the UCCJA failed to successfully address. *See* Annotation, *Child Custody: When Does State That Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 USCA § 1738A,* 83 A.L.R.4th 742, 748 (1991). One problem the UCCJA failed to address was continuing jurisdiction and the potential for concurrent jurisdiction between two states. *See* Roger M. Baron, *Child Custody Jurisdiction,* 38 S.D. Law Review 479, 489 (1993) (in enacting the PKPA, Congress closed the

loopholes which had evolved under the UC-CJA, strengthening the exclusive nature of continuing jurisdiction). The PKPA addressed continuing jurisdiction, but a concern was whether it pre-empted state law because it has a specific provision for continuing jurisdiction, while the UCCJA has no specific equivalent.[2] *Annotation,* 83 A.L.R.4th 742, 748 (1991) (citation omitted). The PKPA would govern in the event of conflict with the UCCJA or other state law. *See Dahlen v. Dahlen,* 393 N.W.2d 765, 767 (N.D.1986) (because the PKPA is federal legislation, it will govern where state law conflicts); *see also* Baron, *Child Custody Jurisdiction,* 38 S.D. Law Review at 484.

[¶ 11] Under the PKPA:

The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection [28 USC § 1738A] (c)(1) ... continues to be met and such State remains the residence of the child or of any contestant.

28 USC § 1738A(d). Section (c)(1) allows a child custody determination to be made by a court in a state if that state would have jurisdiction under its own laws. In other words, the jurisdiction of the original decree-rendering state court continues, provided such court has not "lost" jurisdiction in the interim and either the child or one of the contestants continues to reside there.

■ [¶ 12] This Court has interpreted subsection (d) of § 1738A of the PKPA as establishing three criteria that must be met for a court to retain jurisdiction. *Dahlen,* 393 N.W.2d at 768. The first consideration is whether the "original custody determination was entered consistently with the provisions of the PKPA," and the UCCJA. *Id.* at 768. The second requirement is that "subsection (c)(1) continues to be met." *Id.* And third, the State must remain the "residence of the children [child] or of any contestant." *Id.*

A

[¶ 13] At the time of the original custody decree, both Michael and Darla Luna lived in North Dakota. North Dakota was their daughter's home state, and the requirements of both the UCCJA and PKPA were met.

B

[¶ 14] The second criterion under the PKPA requires that subsection (c)(1) continue to be met. Subsection (c)(1) states:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State....

■ [¶ 15] North Dakota district courts have jurisdiction to make custody decisions by initial decree or modification of an initial decree if North Dakota is the "home state," or there is a "significant connection" with this state. N.D.C.C. § 14–14–03. The relevant parts of N.D.C.C. § 14–14–03 state:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:

a. This state (1) is the home state of the child at the time of commencement of the proceeding ...

b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships....

■ [¶ 16] The district court found it had jurisdiction over Michael Luna's daughter under section 14–14–03(1)(a) and (b), because North Dakota was her home state and a

---

2. Whether the UCCJA or other state law conflicts with the continuing jurisdiction language of the PKPA is questionable because the "provisions of § 14 of the UCCJA, along with the Commissioners' Notes to that section, have been interpreted to establish exclusive continuing jurisdiction of the state that made the initial custody determination." *Annotation,* 83 A.L.R.4th 742, 748 (1991) (citation omitted).

significant connection existed between her and North Dakota. The home state recognition was based on the daughter having lived in North Dakota for at least six months following the February 1997 interim ex parte order.

[¶ 17] For "home state" jurisdiction to apply, North Dakota has to be the "home state of the child at the time of commencement of the proceeding, or (2) had [to have] been the child's home state within six months before commencement of the proceeding...." N.D.C.C. § 14–14–03(1)(a). When the district court issued the February 1997 order, North Dakota was not the daughter's home state because she was not living here when the proceeding commenced and had not lived here within the previous six months. *See Catlin v. Catlin,* 494 N.W.2d 581, 586 (N.D. 1992) (criteria supporting jurisdiction must be viewed at the time the particular custody proceeding was commenced). At the time the district court issued the interim order, the daughter had been living in Pennsylvania for almost two years. The six-month requirement for home state jurisdiction could not be gained through the time the daughter spent in North Dakota under the interim order if the court lacked home state jurisdiction at the time it issued the interim order.

[¶ 18] The district court did not, however, base its ruling solely on home state jurisdiction. The court also found a "significant connection" between the daughter and North Dakota because Darla Luna still lived in the state, and her daughter had significant contacts here. We agree there was a significant connection between the daughter and North Dakota, satisfying the modification requirements of N.D.C.C. § 14–14–03.

[¶ 19] In discussing whether a court retains jurisdiction to modify an initial decree, this Court has said "under the PKPA and the UCCJA, a North Dakota *court retains jurisdiction to modify a prior custody determination if the children or either contestant continues to reside in the state* ." *Larson v. Dunn,* 474 N.W.2d 34, 37–38 (N.D. 1991) (emphasis added) (citing *Dahlen,* 393 N.W.2d at 768). In *Hangsleben,* 502 N.W.2d at 843, this Court said "[s]ection 1738A(d) of the PKPA specifically expresses the clear

intent to reserve authority to modify child custody determinations to the state which rendered a prior valid decree...." In *Hangsleben,* this Court declined to exercise jurisdiction because Minnesota had been the original decree-rendering state. *Id.* In *Dahlen,* 393 N.W.2d at 768, a North Dakota trial court issued the original custody decree. On appeal, this Court ruled that under the continuing jurisdiction provisions of the PKPA, North Dakota no longer had jurisdiction to modify the original custody decree when North Dakota was no longer the residence of any of the participants. *Id.* at 768–69; *see also Long v. Long,* 439 N.W.2d 523, 526 (N.D.1989) (North Dakota loses jurisdiction when both parents and children move out of state); *Hedstrom v. Berg,* 421 N.W.2d 488, 490 (N.D.1988) (some judicial powers over custody continue in North Dakota even after children have moved to another state).

[¶ 20] These holdings are supported by other states' decisions. Most states have also recognized continuing jurisdiction under state law and the PKPA. Kansas has said it "provides that the original home state shall have exclusive continuing jurisdiction to modify a previous custody decree, so long as that state remains the residence of the child or of any contestant and modification would also be valid under its own law." *In re Marriage of Anderson,* 25 Kan.App.2d 754, 969 P.2d 913, 915 (1998). A California court has said:

> Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside.

*Kumar v. Superior Court of Santa Clara Cty.,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1007 (1982). *See also Crump v. Crump,* 821 P.2d 1172, 1174–75 (Utah Ct. App.1991) (under PKPA, exclusive continuing jurisdiction to modify a previous custody decree remains with the original home state).

**C**

[¶ 21] The third requirement for exclusive continuing jurisdiction is that one contestant

or the child must still reside in the state. Darla Luna has continued to live in North Dakota since the original divorce decree. Jurisdiction continues in North Dakota where this state made the initial decree, one of the contestants or the child still lives here, and jurisdiction is proper under state law.[3]

### D

[¶ 22] Once jurisdiction has been decided, a court must still determine whether there is a custody proceeding in another state. *See Zimmerman,* 1997 ND 197, ¶ 8, 569 N.W.2d 700 (citing *Hangsleben,* 502 N.W.2d at 842). In this case, there was not another proceeding pending.

[¶ 23] Finally, the court must determine whether North Dakota is a convenient forum. *Zimmerman,* at ¶ 8 (citing *Hangsleben,* at 842). "It is well settled that the decision whether to decline to exercise jurisdiction on inconvenient-forum grounds lies entirely within the trial court's discretion, and its decision will be reversed on appeal only for an abuse of discretion." *Dennis v. Dennis,* 387 N.W.2d 234, 235 (N.D. 1986). A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Austin v. Towne,* 1997 ND 59, ¶ 8, 560 N.W.2d 895 (citations omitted). The original divorce decree was rendered in North Dakota, the mother still lived in North Dakota, there was a substantial amount of litigation involving these two parties in North Dakota, and the daughter had spent time here. Based on these facts, the district court did not abuse its discretion in finding North Dakota a convenient forum. Accordingly, we conclude the district court had jurisdiction in this case under N.D. Const. art. VI, § 8, and N.D.C.C. § 14–14–03.

### III

[¶ 24] Determining whether the district court has jurisdiction is only the first step in custody modification.[4]

A court's analysis in considering whether to modify custody differs from its analysis when awarding original custody. *Delzer v. Winn,* 491 N.W.2d 741, 743 (N.D. 1992). For a determination of an original custody award, only the best interests of the child are considered. N.D.C.C. § 14–09–06.1; *Ternes v. Ternes,* 555 N.W.2d 355, 357 (N.D.1996). But, when a party is seeking to modify a custody arrangement, a court applies a two step process. *Hagel v. Hagel,* 512 N.W.2d 465, 467 (N.D.1994). A trial court must determine: 1) Whether there has been a significant change of circumstances following the divorce and custody determination, and; 2) whether the changes of circumstances effect [sic] the child in such an adverse way that it compels or requires a change in the existing custody arrangement to further the best interests of the child. *Id.* at 467; *[Johnson v.] Schlotman,* 502 N.W.2d [831,] [ ] 834 [ (N.D.1993) ]; *Delzer,* 491 N.W.2d at 743; *Blotske v. Leidholm,* 487 N.W.2d 607, 609 (N.D.1992). The burden of proving these two elements is on the moving party. *Hagel,* 512 N.W.2d at 467. Not every change in circumstances will amount to a "significant change" warranting a change or modification of custody. *Ludwig v. Burchill,* 481 N.W.2d 464, 469 (N.D.1992) (Levine, J., concurring specially).

*Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 6, 562 N.W.2d 390.

[¶ 25] The district court found there had been a significant change in circumstances compelling the change of custody, and made substantial and specific findings in the second amended judgment. The court

---

3. If a motion is filed in another state, such as the current home state of the child, that state court may communicate with the state having exclusive continuing jurisdiction to see whether the exclusive-continuing-jurisdiction state will decline to exercise its jurisdiction, thereby permitting the other state, as more appropriate, to assume jurisdiction. *See* N.D.C.C. § 14–14–07(4).

4. Because the interim ex parte order was issued in February 1997, and the hearing was held in May 1997, the new statute regarding custody modification, which took effect August 1, 1997, would not apply. *See* N.D.C.C. § 14–09–06.6.

found a significant change in circumstances based on: Michael Luna's subsequent marriage; Lori Luna's having assumed the primary care-giving responsibility for Michael Luna's daughter; the evidence of physical violence by Michael Luna against Lori Luna during their three-year marriage, which led to a one-year restraining order against him; Michael Luna, following his separation from Lori Luna, having made no attempt to take his daughter into his custody, and Lori Luna having had to contact the girl's mother because she was worried, knowing she had no right to her legal custody; Michael Luna having disregarded court orders that his daughter be allowed visitation before moving her out of state, and his deliberately and intentionally having frustrated Darla Luna's visitation rights.

[¶ 26] The court found that during the approximately 10 months the daughter resided with Darla Luna in Minot, the daughter did well in school, made friends, went to church and otherwise interacted with her grandparents, and had the benefit of a renewed sibling relationship with her mother's other children. The court also found no evidence Michael Luna had extended family in the Williamsport, Pennsylvania, area. The district court found a material change in circumstances based on these findings of fact, and found it in the daughter's best interests that Darla Luna be awarded primary physical care, control, and custody.

[¶ 27] The question is whether the district court's findings of fact are clearly erroneous. We will not set aside a trial court's finding of fact unless it is clearly erroneous. *Ternes v. Ternes,* 555 N.W.2d 355, 357 (N.D.1996). " 'A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law.' " *Quamme v. Bellino,* 540 N.W.2d 142, 145 (N.D.1995) (quoting *Mahoney v. Mahoney,* 516 N.W.2d 656, 661 (N.D.Ct.App.1994)). We give great deference to the trial court's opportunity to observe the witnesses and determine credibility. *Urlaub v. Urlaub,* 325 N.W.2d 234, 236 (N.D.1982) ("The trial judge was the trier of fact, and, as a corollary, the judge of the credibility of the witnesses. The trial judge is uniquely qualified to determine the credibility of a witness with regard to the truthfulness of the various facts to which the witness testified."); N.D.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Like a jury, the district court, acting as a finder of fact, is entitled to use common sense and general human experience and knowledge. *See State v. Lanctot,* 1998 ND 216, ¶ 16, 587 N.W.2d 568 (agreeing with the district court's "common-sense observation"); *Pavek v. Moore,* 1997 ND 77, ¶ 10, 562 N.W.2d 574 (the fact finder may use "common sense and experience").

[¶ 28] The findings of fact are supported by the record, and we will not substitute our judgment for that of the district court. The findings of fact are not clearly erroneous.

IV

[¶ 29] The judgment of the district court is affirmed.

[¶ 30] VANDE WALLE, C.J., KAPSNER, NEUMANN and MARING, JJ., concur.

