2003 ND 131

**Rachel E. BENSON, Plaintiff
and Appellee,**

v.

**Barry L. BENSON, Defendant
and Appellant.**

**No. 20030033.**

Supreme Court of North Dakota.

Aug. 20, 2003.

Carrie L. Francis, Legal Assistance of North Dakota, Minot, for plaintiff and appellee.

Tom P. Slorby, Minot, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Barry Benson appealed a district court judgment which concluded the state of Texas had jurisdiction to decide his child custody action. We reverse and remand for further proceedings consistent with this opinion.

I

[¶ 2] Barry and Rachel Benson were divorced in July 1998. They had one child, Dalton, who was born in August 1996. By a stipulation incorporated into the North Dakota judgment, the parties agreed to the following visitation arrangements: "[Rachel] shall have care, custody and control and provide the home residence of the minor child ... [Barry] shall be allowed reasonable and liberal visitation upon 48–hour advance notice." Furthermore, the stipulation stated each party

> shall keep the other party and the Clerk of the District Court advised of any change in residence, address, or home telephone number by providing written notification, within 10 days of any change, in order to expedite contact with, and communication regarding any minor child of the parties. [Rachel] may remove the minor child in her custody outside the State of North Dakota.

[¶ 3] In 1998, Rachel obtained a restraining order against Barry, and visitation arrangements were made with a supervised visitation center. Rachel contends Barry wrongfully removed Dalton from the center and thereafter did not request further visitation. In 1999, Rachel and Dalton moved to Texas. Barry alleges he did not know Rachel's location, but Rachel asserts Barry knew she had relocated to Texas, as permitted by the parties' stipulation and approved by the court.

[¶ 4] In February 2002, Barry filed an ex parte motion seeking a change of custody and suspension of his child support obligation. In March 2002, the district court issued an ex parte order granting temporary custody of Dalton to Barry and suspending his child support obligation until further court order. The court subsequently issued an amended ex parte order which notified Rachel of her right to file a written motion and have a hearing concerning the order. Rachel was served the amended ex parte order in Texas. In May 2002, Rachel made a special appearance through her attorney and moved to vacate the order, asserting she and Dalton had been residents of the state of Texas since 1999 and Texas would be the appropriate state to exercise jurisdiction over child custody matters.

[¶ 5] The district court concluded:

> The parties consented to [Rachel] being allowed to remove the child from North Dakota in their stipulation to the court. The court in its order allowed for the child to be removed from the State of North Dakota. Texas is and has been the residence of [Rachel] and the child since 1999. Therefore, the State of Texas would have jurisdiction in this case.

On appeal, Barry argues the court erred in determining it was without jurisdiction.

II

[¶ 6] The Uniform Child Custody Jurisdiction Act ("UCCJA") was enacted in

North Dakota in 1969. *See* 1969 S.L. ch. 154. Among the primary goals of the UCCJA were avoiding jurisdictional competition and conflict, promoting cooperation between states, deterring abductions, and facilitating enforcement of custody decrees between states. *See* N.D.C.C. § 14–14–01 (repealed). However, under the UCCJA, courts were not required to give custody determinations full faith and credit. *See* Kelly Gaines Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 75 N.D. L.Rev. 301, 303 (1999). In 1980, the federal government enacted the Parental Kidnaping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, which requires states to give full faith and credit to other states' custody decrees if the decrees are made consistent with the PKPA. The PKPA was also intended to remedy other problems the UCCJA failed to solve, including the issue of continuing jurisdiction and the potential for two states to have concurrent jurisdiction. *Luna v. Luna*, 1999 ND 79, ¶ 10, 592 N.W.2d 557.

[¶ 7] The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") was promulgated in an effort to clarify ambiguous provisions in the UCCJA and to rectify conflicting state interpretations of the UCCJA. *See* David Carl Minneman, *Annotation, Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act*, 100 A.L.R.5th 1 (2002). The most significant changes in the UCCJEA are prioritizing home-state jurisdiction and providing for exclusive, continuing jurisdiction in the initial decree state. *Id.* The North Dakota Legislature adopted the UCCJEA in 1999, repealing the UCCJA. *See* N.D.C.C. §§ 14–14.1–01 to –37.

### III

[¶ 8] Our prior cases involving interstate custody disputes have been decided under the UCCJA and the PKPA. *See, e.g., Luna*, 1999 ND 79, 592 N.W.2d 557; *Zimmerman v. Newton*, 1997 ND 197, 569 N.W.2d 700. Therefore, we now outline the multi-step process a court must follow in interstate custody disputes in determining whether to exercise jurisdiction under the UCCJEA and the PKPA. *Cf. Luna*, at ¶ 9 (outlining the proper jurisdictional framework to be used under the UCCJA and the PKPA). First, a court must determine whether it has jurisdiction, and, if it finds that it does, it then must determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction. If there is a pending custody proceeding in another state, a court must follow the process in N.D.C.C. § 14–14.1–17 and PKPA § 1738A(g). A court may not modify a decree issued by another state, except as provided in N.D.C.C. § 14–14.1–14 and PKPA §§ 1738A(f) and (h). Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, the court may decline to exercise jurisdiction under N.D.C.C. § 14–14.1–18 on the basis of an inconvenient forum, and the court shall decline to exercise its jurisdiction under the provisions of N.D.C.C. § 14–14.1–19 if a person seeking to invoke the court's jurisdiction has engaged in unjustifiable conduct.

[¶ 9] We stated in *Luna*, at ¶ 9, "[p]rocedurally, a court must first consider whether it has jurisdiction to decide custody and, if it does, the court must then decide, within the framework of the UCCJA and the PKPA, whether to exercise its jurisdiction." (quoting *Hangsleben v. Oliver*, 502 N.W.2d 838, 842 (N.D.1993)). We now proceed with the same analysis within the framework of the UCCJEA and the PKPA to consider the issue of North

Dakota's exclusive, continuing jurisdiction to modify a child custody decree.

[¶ 10] Section 14–14.1–13(1), N.D.C.C., pertaining to a court's exclusive, continuing jurisdiction, states:

Except as otherwise provided in section 14–14.1–15 [temporary emergency jurisdiction], a court of this state which has made a child custody determination consistent with section 14–14.1–12 or 14–14.1–14 has exclusive, continuing jurisdiction over the determination until:

a. A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

b. A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

[¶ 11] Neither party disputes the validity of the original custody determination made by Ward County. Therefore, under N.D.C.C. § 14–14.1–13(1)(a), North Dakota will retain exclusive, continuing jurisdiction unless: (1) a North Dakota court determines the child and at least one parent no longer have a significant connection with the state and the state no longer has substantial evidence concerning the child, or (2) it is determined by North Dakota or another state that all of the parties to the custody dispute have moved away from the state. Because Barry still resides in the state, North Dakota retains exclusive, continuing jurisdiction until a court of this state determines Dalton no longer has a significant connection with the state and the state no longer has substantial evidence concerning Dalton. The original-

decree state retains exclusive, continuing jurisdiction provided the general requirements of the substantial connection jurisdiction provisions are met, even if a child has acquired a new home state. *See* Stoner, *supra*, at 316 n. 93 (quoting UCCJEA § 202 comment, 9 U.L.A. 252–53). However, exclusive jurisdiction will no longer exist "[i]f the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that a court could no longer find significant connections and substantial evidence." *Id.*

[¶ 12] In addition, under N.D.C.C. § 14–14.1–18, a court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Thus, even if the district court concludes North Dakota has exclusive, continuing jurisdiction, it may, under the last step of the multi-step analysis described above, decline to exercise its jurisdiction if it determines the state of Texas is the more appropriate forum for this action.

[¶ 13] But here, the district court concluded "the State of Texas would have jurisdiction in this case." In light of this statement and after reviewing the record, we are unable to determine whether the court concluded it had exclusive, continuing jurisdiction but declined to exercise jurisdiction under N.D.C.C. § 14–14.1–19, whether the court concluded North Dakota did not have jurisdiction, or whether it determined Texas would be the more appropriate forum. Because we are unable to make this determination, we reverse and remand with instructions for the district court to first determine whether under N.D.C.C. § 14–14.1–13(1)(a) the child and at least one parent no longer have a significant connection with this state and

that substantial evidence is no longer available in North Dakota concerning the child's care, protection, training and personal relationships. If the court finds North Dakota has continuing exclusive jurisdiction it must follow the multi-step process described above in determining whether to exercise jurisdiction.[1]

### IV

[¶ 14] Therefore, we reverse and remand for proceedings consistent with this opinion.

[¶ 15] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.

---

1. This process is also consistent with the continuing jurisdiction requirements of the PKPA, which provides:

   The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

   28 U.S.C. § 1738A(d). *Cf. Dahlen v. Dahlen,* 393 N.W.2d 765, 767 (N.D.1986) (noting because the PKPA is federal legislation, it will govern if state law conflicts). Subsection (c)(1) allows a child custody determination to be made by a court only if the court has jurisdiction under its own state laws. Thus, the original issue of whether the district court had jurisdiction to modify the custody decree under North Dakota law remains the issue under the PKPA.