1997 ND 214

**Burton L. WHITMIRE, Plaintiff and Appellant,**

v.

**Audree WHITMIRE, Defendant and Appellee.**

**Civil No. 970155.**

Supreme Court of North Dakota.

Nov. 10, 1997.

Severin, Ringsak & Morrow, Bismarck, for plaintiff and appellant; argued by William C. Severin.

Kapsner and Kapsner, Bismarck, for defendant and appellee; argued by Leslie Bakken Oliver.

MESCHKE, Justice.

[¶ 1] Burton Whitmire appealed denial of his motion to quash an emergency ex parte order giving his former wife, Audree Whitmire, sole custody of their daughter, Sierra, and also appealed the subsequent Second Amended Judgment. We reverse the Second Amended Judgment, but affirm the refusal to quash the emergency order.

[¶ 2] Burton and Audree married in January 1993, and their daughter, Sierra, was born in April 1993. They were divorced in December 1995 for irreconcilable differences. The stipulated judgment placed primary physical custody of Sierra with Audree, and directed that Burton would have reasonable visitation.[1]

[¶ 3] While Burton's June 18, 1996 motion to change primary custody of Sierra to himself was still not completely resolved, one of Burton's weekend visitations with Sierra was scheduled to begin on Friday, March 21, 1997. Instead of picking up Sierra at 6 p.m., as the judgment authorized, Burton picked up Sierra earlier, near 10:15 a.m., at her daycare provider's house. Audree attempted to reach Sierra by phone throughout the weekend, but her efforts were unsuccessful, as were Audree's inquiries to Burton's family. Audree's mother, however, phoned Burton's grandmother, who told her Burton had taken Sierra to Jamaica. When Sierra was not returned on time, and unable to locate her, Audree went to the police station Sunday evening to report Sierra's disappearance.

[¶ 4] On Monday, March 24, 1997, Audree telephoned Burton's employer and learned he had not reported for work. Concerned for Sierra, Audree immediately made, with her affidavit about these developments, an "Emergency Motion to Modify the Divorce Judgment With Respect to Custody of the Minor Child" that sought to obtain sole custody of Sierra and to suspend Burton's unsupervised visitations until further order of the court. The trial court granted the motion ex parte and entered an emergency order that placed Sierra's sole custody with Audree and directed all visitation by Burton to be supervised by the Family Safety Center "until further order of the Court."[2]

---

1. The decree also gave the parents "joint legal custody" of Sierra, but we recently held that designation is meaningless "[a]bsent a specific definition." *Dickson v. Dickson*, 1997 ND 167, ¶ 11, 568 N.W.2d 284.

2. After the emergency order restricted Burton's visitation, a criminal warrant was issued for Burton's arrest. He was arrested on April 7, 1997, and charged with a class C felony for violating NDCC 14-14-22.1 by removing a child from the state contrary to a custody decree. Burton's arrest is not part of this record. However, at oral argument, Audree's counsel asked this court to take judicial notice of the arrest, and Burton's counsel made no objection. *See* NDREv 201.

[¶ 5] On the same day, March 24, Audree's counsel served the emergency order on Burton's counsel by both facsimile transmission and hand delivery. *See* NDRCivP 5(b). On March 31, 1997, Burton moved to quash the emergency order for lack of a prior evidentiary hearing and, alternatively, requested a hearing on "the necessity and validity" of it. Burton filed an accompanying brief but neither requested oral argument nor scheduled a time for hearing. Audree formally responded, resisted quashing, but did not object to a hearing.

[¶ 6] On April 4, 1997, without an evidentiary hearing and without further notice, a Second Amended Judgement was entered by the clerk at the instigation of Audree's counsel. The Second Amended Judgment granted Audree sole custody of Sierra, and restricted Burton to supervised visitation with Sierra. On April 8, 1997, Audree's counsel served notice of entry of the Second Amended Judgment on Burton's counsel by mail.

[¶ 7] Acting on the briefs, the trial court denied Burton's motion to quash on May 15, 1997. On May 21, 1997, Burton appealed the order denying his motion to quash the emergency order and also appealed the Second Amended Judgment.

[¶ 8] This Second Amended Judgment was entered without notice or hearing, apparently because the emergency order was entitled "Order to Amend Divorce Judgment." Under NDRCivP 58, a judgment is usually entered "[u]pon the filing of an order for judgment" when it is intended to be final and effective, not temporary. However, this order was ex parte and without any hearing, it was based on an emergency and, procedurally, it could only be temporary. *See* NDROC 8.2; NDCC 32–06–06 and 32–06–07. Since an ex parte emergency order is temporary, it cannot direct entry of a final judgment.

[¶ 9] Generally, an "order made ... without notice is not appealable...." NDCC 28–27–02(7). Yet, "after a hearing is had upon notice which ... refuses to set aside an order previously made without notice," even an order initially issued ex parte becomes appealable when "an appeal might have been taken from such order so made without notice, had the same been made upon notice." *Id.* Some kind of hearing was held here, even though not an evidentiary one and, on the briefs, the trial court refused to set aside this temporary order that resulted in entry of an amended judgment. Thus, we conclude this judgment is reviewable.

[¶ 10] Our scope of review also reaches "any intermediate order ... which involves the merits and necessarily affects the judgment...." NDRAppP 35(a). Hence, we also review the intermediate order denying Burton's motion to quash the emergency order.

[¶ 11] Ex parte, interim, and temporary orders in all domestic relations cases are expressly governed by North Dakota Rules Of Court 8.2. "The provisions which may be included in an ex parte interim order are temporary custody...." NDROC 8.2(a)(3). "No interim order may issue except upon notice and hearing unless the court specifically finds exceptional circumstances." *Id.* at (a)(1). An exceptional circumstance for an ex parte order, without notice and hearing, is the need to protect a child in a custody dispute. NDROC 8.2(a)(1)(B). While neither of these parties referred to NDROC 8.2, and each counsel thought it applied only to temporary orders during the pendency of an initial divorce action, NDROC 8.2 is expressly intended for all "interim orders in domestic relations cases." A post-decree motion seeking to modify the terms of custody or visitation in a divorce decree is a domestic relations case.

[¶ 12] Ordinarily, a parent in Audree's position would move to modify the divorce judgment and, contemporaneously, make a subsidiary motion for an interim temporary order pending full hearing on the motion to modify. Audree did not carefully frame each motion separately. For a temporary order in a domestic relations case, NDROC 8.2 requires a specific notice to be given to the party against whom the interim order is directed:

An interim order issued ex parte must provide specifically:

A. That the party to whom the order is directed, upon written motion may have a

hearing upon the necessity for the issuance of the order . . . .

NDROC 8.2(a)(5)A. In this case, Audree's counsel also failed to properly notify Burton and his counsel that, as NDROC 8.2(a)(5)A directs, he may "have a hearing upon the necessity" of the interim order by making a "written motion" for one.[3]

[¶ 13] While Audree's counsel would have helped everyone by framing the motions better and giving due notice for a hearing on the requested interim order, there were procedural blunders all around in this case. The trial court, in its discretion, might have' refused an ex parte order that did not state the notice required by the applicable rule. Instead, it entered a temporary order to deal with the facially demonstrated emergency. *See* NDROC 8.2(a)(2): "No ex parte interim order may be issued unless the movant executes an affidavit setting forth specific facts justifying the issuance of the order." Audree filed an affidavit that facially justified an emergency order.

[¶ 14] While Burton's counsel timely responded to the emergency order, his motion to quash was not the procedure contemplated by NDROC 8.2. No evidentiary affidavit accompanied or followed his motion to challenge the lack of an emergency or to support an evidentiary hearing to contest the lack. of necessity for an ex parte order.

[¶ 15] Generally, in American English, "a *motion to quash* is usu[ally] a motion to nullify a writ or subpoena." Bryan A. Garner, *Modern Legal Usage* 725 (2d ed.1995). A motion to quash is more like a motion to dismiss for. failure to state a claim for relief. *See* NDRCivP 12(b)(v). But Audree's affidavit satisfactorily set forth specific facts that facially furnished grounds for an emergency temporary order.

[¶ 16] The trial court so ruled in its May 15th order: "That [emergency ex parte] order is effective until further order of the Court." Without evidence that challenges the need for an emergency order, as the rule contemplates, an emergency temporary order should be continued to address the demonstrated emergency. Under NDROC 8.2(a)(6), an "ex parte interim order remains in effect until it is amended following a court hearing."

[¶ 17] The party contesting the need for an emergency temporary order must do so with affidavits. Part of NDROC 8.2(e)(2) says: "Unless the court otherwise orders, evidence ... in opposition to the interim order must be presented by affidavit. Evidence presented by affidavit may not be considered unless, at the time of the evidentiary hearing, the party offering the affidavit makes the affiant available for cross examination." [4] Since Audree adequately demonstrated an emergency with her affidavit, and Burton failed to marshal evidence to contest that emergency, the trial court did not abuse its discretion in refusing to quash the emergency order.

[¶ 18] Unless the trial court directs otherwise, the procedural rules require all evidentiary affidavits to be filed before the hearing.[5] NDRCivP 5(d)(2) directs: "All affidavits ... designed to be used upon the

---

3. Even without a specific rule for domestic relations cases, the general procedures for temporary restraining orders are similar. *See* NDRCivP 65; NDCC 32–06–07 (temporary restraining order authorized when "there exists such an exigency or occasion as requires the immediate issuance of an order so that the rights of the parties may be preserved"); and NDCC 32–06–06 ("an order may be made requiring cause to be shown at a specified time and place why the injunction should not be granted, and the defendant in the meantime may be restrained").

4. NDCC 32–06–09 spells out comparable general procedures to contest a temporary restraining order:

If an injunction is granted by a judge of a court without due notice, the defendant at any time before the trial may apply, upon notice, to a judge of the court in which the action is brought, to vacate or modify the same. The application may be made upon the complaint and the affidavits on which the injunction was granted or upon affidavits on the part of defendant, with or without the answer.

5. NDRCivP 43(e) directs:

*Evidence on motions.* When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.

hearing of a motion ... shall be filed at least 24 hours before the hearing unless otherwise directed by the court." *See Sandbeck v. Rockwell,* 524 N.W.2d 846, 850–51 (N.D.1994)(affirming domestic violence protection order when respondent failed to timely file contesting affidavits for the hearing). If the emergency is contested, an evidentiary hearing is essential to keep an emergency interim order in effect.

[¶ 19] Still, the trial court's May 15, 1997 order, while properly refusing to quash the emergency order, is ambiguous and puzzling. The court said cryptically:

> If Burton Whitmire wishes to make a motion to further amend the divorce judgment, he should do so and the Court will consider the motion and responses.

If this comment intended, as Burton contended here, that Burton would have the burden of proof at the evidentiary hearing to contest the temporary order or, later on, at a hearing on the underlying main motion to modify the existing custody judgment, it was wrong. Part of NDROC 8.2(e)(2) directs: "The party initially seeking interim relief shall proceed first at the hearing." In any evidentiary hearing, either to continue the interim order or to modify the existing custody judgment, Audree, as the movant, would have the burden of proof.

[¶ 20] Audree's counsel garbled the procedure by combining her interim motion for an emergency temporary order with her main motion to amend the custody judgment. She made a single "Emergency Motion to Modify The Divorce Judgment with Respect to Custody of the Minor Child." Audree did not schedule an evidentiary hearing on modification of the judgment, and no modification hearing has been held. Unless waived by the respondent, a full evidentiary hearing would be necessary before the custody judgment can be modified. An emergency, ex parte, and temporary order cannot modify a final custody judgment, except temporarily pending further proceedings. Therefore, we reverse the Second Amended Judgment as improperly entered.

[¶ 21] Yet the trial court's May 15 order seems to recognize that Burton, having made a timely response, may still have an evidentiary hearing on the need for the emergency order or, at least, on the main motion to amend the judgment to change custody. *Compare* NDROC 8.2(a)(5)(C), which directs an "interim order issued ex parte must provide specifically: ... That any hearing on the order must be held within 30 days from the date the motion is filed...." There is nothing so wrong with this temporary order that an evidentiary hearing could not correct it.

[¶ 22] Burton did nothing to get a timely evidentiary hearing, although his alternative request for a hearing may remain pending while unsupported by any contesting affidavits. Audree did nothing to schedule the necessary evidentiary hearing on her main motion to modify the custody judgment, and is not entitled to amend the judgment until she successfully completes that procedure. Therefore, our affirmance of the denial of Burton's motion to quash is without prejudice to evidentiary hearings on the necessity of the emergency order and on modifying the custody judgment, or both. The parties need to schedule the necessary hearings with the court.

[¶ 23] In sum, we affirm the denial of the motion to quash the emergency ex parte order, reverse the entry of the Second Amended Judgment, and remand for further proceedings.

[¶ 24] VANDE WALLE, C.J., MARING and NEUMANN, JJ., and GERALD H. RUSTAD, District Judge, concur.

[¶ 25] GERALD H. RUSTAD, District Judge, sitting in place of SANDSTROM, J., disqualified.